NOT FOR PUBLICATION (Document No. 78)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

|  |  |
|---|---|
| GINGER KATZENMOYER, as Administratrix of the Estate of Brett Katzenmoyer, Deceased <br><br> Plaintiff, <br><br> v. <br><br> CAMDEN POLICE DEPARTMENT, and CITY OF CAMDEN, et al. <br><br> Defendants. | Civil No. 08-1995 (RBK/JS) <br><br> **OPINION** |

**KUGLER**, United States District Judge:

This matter arises out of Plaintiff Ginger Katzenmoyer's ("Plaintiff") suit on behalf of her deceased son Brett Katzenmoyer against multiple defendants belonging to the law enforcement community of Camden, New Jersey. Plaintiff alleges that the defendants violated Brett Katzenmoyer's civil rights under color of state law and are therefore liable to his estate under 42 U.S.C. § 1983 (2006). Further, Plaintiff seeks recovery under the New Jersey Wrongful Death Act, N.J.S.A. § 2A:31-1 *et seq.*, and the New Jersey Survival Act, N.J.S.A. § 2A:15-3 *et seq.* Currently before the Court is Defendants City of Camden and Camden Police Department's ("Defendant")[1] motion for summary judgment on Plaintiff's Complaint (Doc. No.

---

[1] Although Plaintiff named both the City of Camden and the Camden Police Department as separate Defendants in her complaint, the City notes, and Plaintiff acknowledges, that the two are not distinct legal entities for purposes of this lawsuit. Def.'s Br. in Support of Mot. for S.J. 3 n.1; Pl.'s Opp. Br. 1 n.1; *see also Franks v. Cape May County*, No. 07-6005, 2010 WL 3614193 at *7 (D.N.J. Sept. 8, 2010) (citing numerous cases for the proposition that "[i]n New jersey, a municipal police department is not an entity distinct from the municipality"). Accordingly, the Court

1

78).  For the reasons stated herein, the Court finds that Plaintiff has failed to offer evidence sufficient to create a genuine issue for trial regarding Defendant's liability to Plaintiff under 42 U.S.C. § 1983.  Thus, Defendant's motion on Plaintiff's federal claim will be granted.  However, Plaintiff has created a disputed issue of material fact as to Defendant's liability under the New Jersey Wrongful Death and Survival statutes.  Accordingly, Defendant's motion for summary judgment on those claims will be denied.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY[2] [3]

On August, 18, 2008, Brett Katzenmoyer went to see the band O.A.R. perform at the venue known at that time as the Tweeter Center in Camden, New Jersey.  Def.'s SUMF ¶ 11.  While spending time with friends in a parking lot outside the Tweeter Center, Brett Katzenmoyer was arrested by defendant Officers Ronald Lattanzio and John McArdle.  *Id.* at ¶ 23.  Mr. Katzenmoyer sustained serious injuries in the course of his arrest and detention.  Pl.'s SUMF ¶¶ 25-26.  A few days after the concert, on August 22, 2007, Plaintiff found her son unresponsive and called an ambulance.  Def.'s SUMF ¶ 86.  Brett Katzenmoyer was taken to the hospital where he was placed on a ventilator and diagnosed with acute renal failure, anoxic brain injury including cardiac arrest, and other conditions.  *Id.* at ¶¶ 89-90.  Finally, on August 23, Mr. Katzenmoyer was removed from life support and pronounced dead.  *Id.* at ¶ 91.

The Camden Police Department's Internal Affairs Division opened an investigation into Mr. Kaztenmoyer's arrest.  *Id.* at ¶ 104.  Sometime thereafter, the Camden County Prosecutor's

---

will dismiss the Camden Police Department from this case and will refer the City of Camden as "Defendant" throughout this opinion.

[2] When considering a defendant's motion for summary judgment, the Court views the facts underlying the claim in the light most favorable to the plaintiff.  *See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc.*, 998 F.2d 1224, 1230 (3d Cir. 1993).

[3] The parties vigorously dispute many of the facts underlying plaintiff's claim.  However, given that the instant summary judgment motion involves only Defendant City of Camden, the Court may generally limit its factual recitation to events involving this particular party.

Office took the lead on the investigation but did not bring criminal charges against either officer. *Id.* at ¶¶ 109-10. Plaintiff offers the deposition testimony of Internal Affairs investigator Vincent McCalla in which he admits to both not including in his draft report the statements of a witness who reported that Officer McCardle repeatedly beat Brett Katzenmoyer, and failing to interview the friends of Brett Katzenmoyer who were with him at the Tweeter Center at the time of his arrest. McCalla Deposition, pp. 55, 68-69.

Regarding the civilian complaint investigation process in general, Plaintiff avers that from 2003 through 2009, the Camden Police Internal Affairs Department sustained only one complaint against police officers out of 641 that were filed. Pl.'s SUMF B. ¶ 1. Further, it appears that prior to the incident involving Brett Katzenmoyer, defendant Officer Lattanzio had had nine complaints filed against him for misconduct; only one of those involved an allegation of excessive force. Def.'s Br. in Support of Mot. for S.J., Exh. 56. Defendant Officer McCardle had been the subject of three complaints, none of which involved the use of force. *Id.* at Exh. 57.

Plaintiff filed suit in this Court against multiple defendants, stating claims under Section 1983 for the use of excessive force in effecting Brett Katzenmoyer's arrest; in addition, Plaintiff asserted an entitlement to relief under the New Jersey Wrongful Death and Survival statutes. After a prolonged period involving administrative termination of the case for over six months followed by the discovery process, Defendant filed the instant motion for summary judgment (Doc. No. 78). Defendant advances three arguments in support of its motion. First, it claims that Plaintiff has not satisfied the requirements for establishing municipal liability under section 1983. Def.'s Br. in Support of Mot. for S.J. 25-29 (citing *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658 (1978)). Second, Defendant asserts that it is entitled to qualified

3

immunity from suit. *Id.* at 29-30.[4] Finally, Defendant maintains that the Court should grant it summary judgment on Plaintiff's state law claims because no dispute of material fact exists showing any wrongful conduct on the part of any defendant named in this case.

## II.    DISCUSSION

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When the Court weighs the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by "produc[ing] evidence showing the absence of a genuine issue of material fact" or by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party satisfies this initial burden, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to

---

[4] Plaintiff correctly notes that municipalities are not entitled to the defense of qualified immunity. Pl.'s Opp. Br. 28 (citing *Leatherman v. Tarrant County*, 507 U.S. 163, 166 (1993)). Defendant offers no colorable argument to the contrary. Thus, the Court will deny Defendant summary judgment on this basis, and the issue will receive no further consideration in this opinion.

survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.  Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"  *Corliss v. Varner*, 247 Fed. Appx. 353, 354 (3d Cir. Sept. 17, 2007) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)).

In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249.  Credibility determinations are the province of the factfinder, not the district court.  *BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

### III.   ANALYSIS

#### A.   Municipal Liability under Section 1983

Defendant correctly notes that, as a municipal entity, it cannot be held liable to Plaintiff under 42 U.S.C. § 1983 on a theory of respondeat superior.  *See Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978).  Rather, to establish a Section 1983 municipal liability claim that will survive a motion for summary judgment, Plaintiff must offer evidence of a particular municipal policy or custom, "whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy," that contributed to the injury of which Plaintiff now complains.  *See id.* at 694.  Having identified that custom, Plaintiff then must establish causation by showing how the municipality's deliberate conduct under that custom was the "moving force" behind the injury alleged.  *See Board of County Com'rs of Bryan*

*County, Okl. v. Brown*, 520 U.S. 397, 404 (1997).  Where, as here, the custom itself does not facially violate federal law, this burden involves "demonstrating that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."  *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000) (quoting *Brown*, 520 U.S. at 404).

Accordingly, Plaintiff, in her moving papers opposing summary judgment, argues that Defendant failed to act "in the face of an obvious risk of future Constitutional violations."  Pl.'s Opp. Br. 23 (citing *Jones v. City of Philadelphia*, No. 08-3336, 2011 WL 710212 at *4 (E.D. Pa. Feb. 25, 2011)).  Specifically, Plaintiff relies on evidence suggesting that the alleged failure of Defendant to sustain excessive force complaints filed against the Camden City Police Department created a custom "tolerating the tacit use of excessive force by its police officers," and that this custom was the moving force behind the physical injuries Brett Katzenmoyer suffered when he was arrested by defendant Officers McArdle and Lattanzio.  *Id.* at 26 (citing *Beck v. City of Pittsburgh*, 89 F.3d 966, 976 (3d Cir. 1996)).

It is well recognized that municipalities may be liable under Section 1983 on this basis.  *See, e.g.*, *Hammock v. Borough of Upper Darby*, No. 06-1006, 2007 WL 3232115 at *8 (E.D. Pa. Oct. 31, 2007) (describing the inquiry as "whether [the defendant's] internal investigatory and disciplinary procedures constituted a municipal policy of deliberate indifference toward the risks of police misconduct, and whether adherence to that policy proximately caused [the plaintiff's] constitutional injuries.").  Whether this custom in fact existed and had such an effect in the present case, Plaintiff maintains, is an issue of disputed fact that precludes the entry of summary judgment at this time.  The Court now turns to the merits of this argument.

In *Beck v. City of Pittsburgh*, the Third Circuit recognized that a Section 1983 claim for damages against a municipality could survive summary disposition where the plaintiff offered

6

evidence suggesting that the municipality's chief law enforcement policymaker knew about and acquiesced in a custom that tolerated the use of excessive force by city police officers.  89 F.3d 966 (3d Cir. 1996).  Specifically, the plaintiff offered into evidence a series of detailed excessive force complaints against the defendant police officer who had allegedly injured plaintiff.[5]  The Court found the introduction of these records sufficient "for a reasonable jury to infer that the Chief of Police of Pittsburgh . . . knew, or should have known, of [the defendant officer's] violent behavior in arresting citizens." *Id.* at 973.  That is, because the officer had allegedly used excessive force on numerous occasions in the past before allegedly using such force against the plaintiff in *Beck*, there arose disputed issues of fact whether an informal policy of acquiescence existed and whether it had caused the plaintiff's alleged injuries.  Accordingly, the Third Circuit panel reversed the trial court's grant of judgment as a matter of law in favor of the defendant municipality.  *Id.* at 976.

While the *Beck* court noted that a number of considerations led it to reverse the trial court's judgment,[6] the court distinguished contrary authority principally on the basis of the admission of numerous written civilian complaints filed against the officer who had allegedly injured the plaintiff.  *Id.* at 975 (distinguishing *Bryant v. Whalen*, 759 F. Supp. 410 (N.D. Ill. 1991)).  That is, the multiplicity of excessive force complaints surrounding a single officer suggested to the court that those occurrences were not isolated incidents, but rather constituted a pattern of dangerous behavior requiring real intervention on the part of the city.  *See id.* at 975.

---

[5] The trial court in that case bifurcated the plaintiff's cases against the police officer and the city, so the police officer was not actually a party to the case that the Third Circuit heard on appeal.  *Beck*, 89 F.3d at 967.

[6] Specifically, the Court found that the city's procedures for investigating complaints of excessive force by officers were "structured to curtail disciplinary action and stifle investigations into the credibility of the City's police officers." *Id.* at 974.  This was because police officers' statements appeared to have been given special, favorable consideration. *Id.*  In addition, there was no formalized tracking of complaints made against individual officers.  Further, there was an internal report acknowledging that the department had a problem with police use of excessive force. *Id.* at 975.  Finally, there was statistical evidence offered about the number of excessive force complaints lodged against the city each year and the rate at which they were sustained by the investigating agency. *Id.* at 970.

Since the *Beck* decision, trial courts in this circuit have grappled with the issue of what type of evidence a plaintiff must adduce in support of a *Monell* municipal liability claim under Section 1983 in order to survive summary judgment. For instance, statistical evidence alone, "isolated and without further context," generally "may not justify a finding that a municipal policy or custom authorizes or condones the unconstitutional acts of police officers." *Merman v. City of Camden*, 824 F. Supp. 2d 581, 591 (D.N.J. 2010) (citing *Strauss v. City of Chicago*, 760 F.2d 765, 768-69 (7th Cir. 1985)). Instead, if a plaintiff wishes to rely principally on statistics showing the frequency of excessive force complaints and the rate at which those complaints are sustained, she must show why those prior incidents were wrongly decided and "how the misconduct in those cases is similar to that involved in the present action. *See Franks v. Cape May County*, No. 07-6005, 2010 WL 3614193 at *12 (D.N.J. Sept. 8, 2010). One way to do this would be to show, as was done in the *Beck* case, that the officer whom a plaintiff accuses of using excessive force has been the subject of multiple similar complaints in the past. *See Beck*, 89 F.3d at 975; *see also Garcia v. City of Newark*, No. 08-1725, 2011 WL 689616 at **3-5 (D.N.J. Feb. 16, 2011) (denying defendant municipality's motion for summary judgment on plaintiff's Section 1983 claim when plaintiff presented evidence that the six individual defendants together accounted for more than 55 complaints for excessive force and false arrest in the 11 years prior to the incidents at issue in that case).

Alternatively, when such evidence against the particular officer is not available, a trial court in this District has found sufficient a plaintiff's submission of a sample of forty excessive force complaints from the relevant police department bearing similarities to her own case and arguably evincing a tendency on the part of the internal affairs division to insulate officers from liability. *Merman v. City of Camden*, 824 F. Supp. 2d 581, 593-94 (D.N.J. 2010).

In this case, even viewing the facts alleged in the light most favorable to the non-moving party, the Court must conclude that Plaintiff has not offered the type of evidence necessary to create a genuine issue of material fact regarding her *Monell* claim against Defendant. Plaintiff offered record evidence showing that between 2003 and 2009, out of 641 complaints filed against Camden police officers, the City's Internal Affairs Division sustained only once such grievance. Pl.'s SUMF B. ¶ 1. Standing alone, however, this is the type of statistical evidence that cannot support a finding of municipal liability under Section 1983. *See Merman*, 824 F. Supp. 2d at 591. Further, Plaintiff has not offered a sample of these complaints for the Court's consideration; such evidence is necessary to give rise to the inference that the Internal Affairs Division rejected civilian complaints in order to insulate officers from liability (thereby laying the foundation for Plaintiff's deliberate indifference liability theory) as opposed to some other, permissible reason (such as that the claims were without evidentiary foundation). *See id.*; *see also Beck*, 89 F.3d at 975 (citing *Strauss v. City of Chicago*, 760 F.3d 765, 768-69 (7th Cir. 1985)) for the proposition that statistics alone are insufficient to prove municipal liability "because people may file complaints for many reasons, or for no reason at all").[7]

In addition, Plaintiff cannot show that either of the two particular officers in question, defendant Officers McArdle and Lattanzio, had a history with multiple excessive force complaints, as was the case of the defendant officer in *Beck*. *See Beck*, 89 F.3d at 975. Specifically, at the time they encountered Brett Katzenmoyer in the parking lot of the Tweeter Center in August 2008, Defendant Lattanzio had been the subject of a single excessive force

---

[7] Plaintiff notes that she requested a comprehensive history of internal affairs records during the process of discovery but that Defendant refused the request as "burdensome." Pl.'s SUMF B. ¶ 2 n.3. However, Defendant rightly notes that the mere objection to a discovery request does not permit the inference that the documents, had they been produced, would have supported Plaintiff's claim. Def.'s Reply Br. 8 (citing *Lamb v. Wysocki*, No. 06-2166, 2008 WL 1732973 at *14 (D.N.J. Apr. 10, 2008)). Rather, Plaintiff's proper course of action would have been to take steps to compel production of these documents from Defendant, given their importance to establishing her *Monell* claim.

complaint, while Defendant McArdle had had no such complaints filed against him.[8] Def.'s Br. in Support of Mot. for S.J., Exhs. 56-57. Thus, Plaintiff cannot rely on the particular officers' respective histories of excessive force allegations in support of her municipal liability claim.

For these reasons, the Court finds that Plaintiff has not offered evidence that creates a disputed issue of material fact sufficient to support her municipal liability claim against Defendant under 42 U.S.C. § 1983. Thus, Defendant's motion for summary judgment on this claim will be granted.[9]

**B.     Sufficiency of Allegations under New Jersey Statutes**

Defendant argues that "there simply is not a causal connection between any claimed *wrongful* actions of any of the Defendants in this case and the death of the decedent." Def.'s Br. in Support of Mot. for S.J. 33. However, Defendants support this contention with facts that are in dispute with Plaintiff's proffered evidence. *See, e.g.*, Pl.'s Opp. Br. 29-30 (citing deposition of Anthony Robertson, pp. 72-73; Report of Wayne K. Ross, p. 14). Thus, viewing the facts in the light most favorable to the non-moving party, the Court cannot conclude that Defendants are

---

[8] Plaintiff offers documentation that she claims shows that Officer Lattanzio had eight complaints filed against him for misconduct prior to the incident involving Brett Katzenmoyer. Plaintiff's SUMF B. ¶ 5; Exh. R. The Court's review of that exhibit indicates the presence of only four such complaints. However, Defendant's exhibits concerning Officer Lattanzio indicate that he had been the subject of nine complaints. Even crediting the higher number, the Court notes that, given the range of reasons that a police officer might have a complaint filed against him, the proper inquiry for determining whether Defendant should have been on notice about this officer's propensity to use excessive force should be the number of *actual written civilian complaints* alleging the use of excessive force or similarly serious infractions, rather than the number of complaints in total, which might include allegations of unpleasant demeanor, police rule infractions, and similar minor, non-violent offenses. *Accord Beck*, 89 F.3d at 969-970 (reviewing only those complaints for excessive force against the officer in question); *Garcia*, 2011 WL 689616 at *4 (considering only those complaints for excessive force and false arrest). Thus, this Court concludes that Defendant Lattanzio had only one past complaint of relevance to the present case, while Defendant McArdle had none.

[9] Finally, while Plaintiff does present evidence suggesting that the excessive force investigation involving Brett Katzenmoyer and defendant Officers Lattanzio and McArdle left something to be desired in terms of its thoroughness and scope, Plaintiff cannot rely on the *Beck* case, as she appears to do, for the proposition that such anecdotal evidence based on one investigation is sufficient to create a triable issue of material fact on her *Monell* deliberate indifference claim. *See* Pl.'s Opp. Br. 25-26; *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (finding that "a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*"). Thus, her claim cannot survive summary judgment on this basis.

entitled to judgment as a matter of law.  Accordingly, it will deny Defendant's motion for summary judgment on Plaintiff's state law claims.

## IV.  CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Defendant's motion for summary judgment.  Specifically, the Court finds that Plaintiff has not offered sufficient evidence to support her municipal liability claim under 42 U.S.C. § 1983.  Thus, the Court will grant Defendant's motion for summary judgment on that claim.  On the other hand, Plaintiff has presented evidence sufficient to create a triable issue of material fact regarding her claims against Defendant brought under the New Jersey Wrongful Death Act, N.J.S.A. § 2A:31-1 *et seq.*, and New Jersey Survival Act, N.J.S.A. § 2A:15-3 *et seq*.  Accordingly, the Court will deny summary judgment on these claims.  An appropriate order shall issue today.

Dated:  12/19/2012                                                              /s/ Robert B. Kugler
                                                                                           ROBERT B. KUGLER
                                                                                           United States District Judge